No. 23,795.

POLLY CASEBEER ct al., *Appellees,* v. THE CARBON COAL COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Injuries—Consent to Arbitration—Filing of Award—Estoppel.* The defendant, having consented to the appointment of an arbitrator under the workmen's compensation act and having appeared before him without objection and tried the matter, cannot now be heard for the first time to impeach the award because not filed within sixty days from the appointment.

2. SAME—*Notice of Injury—Objection Thereto Raised Too Late.* The application for appointment having alleged proper notice of the injury and demand for compensation and no objection for lack of proof thereof being made in the court below, none will be heard now.

3. SAME—*Injury Arose in Course of Employment.* The evidence examined and held fairly to support the conclusion that the injury arose out of and in the course of the employment.

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed March 11, 1922. Affirmed.

*J. J. Campbell, P. E. Nulton,* and *C. O. Pingry,* all of Pittsburg, for the appellant.
*C. A. McNeill, E. V. McNeill,* both of Columbus, and *Maurice McNeill,* of Galena, for the appellees.

The opinion of the court was delivered by

WEST, J.: The defendant coal company appeals from the judgment rendered under the workmen's compensation act.

Casebeer v. Coal Co.

John Casebeer had been employed by the defendant about six-teen months before his death and was operating a steam shovel in a strip pit. In the pit was a pump controlled by electricity. Case-beer was directed with others to lift this pump up on some ties to get it out of the water. While so doing he fell and threw out his hand and grasped an electric wire, which rendered him unconscious for three or four minutes. His hand was burned, but he came back to work and continued working some time. His ear became in-flamed and as a result he died January 8, 1921. The plaintiffs applied for the appointment of an arbitrator alleging that the de-ceased in the discharge of his duties was injured and as a result of the accident death ensued, asking for $3,800, alleging failure to agree upon an arbitrator, demand in writing, and notice of the injury. The company filed its consent to the appointment of an arbitrator and one was appointed on February 16, 1921. The de-ceased's wife testified before the arbitrator that some time about the first of December he came home and something appeared to be the matter with him.

"He came home at quitting time in the evening, he was sick. Clear across his hands were wire prints. They were burns. There was a kind of watery blood, not real red blood, but watery blood coming from the right ear. He appeared to be sick and suffering and trembly. He couldn't hardly hold his fork at the table and he was pale and apparently suffering pain. My husband attempted to work after that. After that he just looked bad, looked pale and like he was in pain always. During part of the time it was bloody water like and corruption coming from his ear. I had never noticed that condition prior to the time he came on the 4th day of December . . . .

"A. He said he was going to die. He called me to him and told me that he got hurt with the Carbon Coal company and had always suffered ever since. He got hurt moving a pump, he said, lifting a pump over some way. He told me that Mr. Crossby and two or three other men and his son were there at the time he got hurt. This wire struck him or he took hold of it in some way, he said. And he said 'You call Mr. McNeill, I am going to leave you and the children.'" (The part about Mr. McNeill was stricken out by the court.)

Doctor Brookhart testified that he attended the deceased in his last sickness.

"He was in a very precarious condition. He lived a few hours after that. . . . He had an infectious condition. It was not produced by any of the common diseases I am called upon to treat. I have a slight experience in regard to persons afflicted with electric shock. I have studied the matter a little. In an electric shock if it is of enough severity to inflict any great injury there is usually two points, the one of the contact and one of the current."

He was asked a hypothetical question intended to cover the history of the case and said:

"A. I believe, from my experience, that the shock could have some bearing on the condition."

· John Casebeer testified that he was working with his father when he received the shock.

"My father was unconscious between three and five minutes after grabbing the wire and he had burns across his left hand. He was nervous and complained about his head that night. Prior to that time he was well and able-bodied and after this injury he was rather nervous and sometimes weak minded. We both continued to work at that mine and at times we were working together I helped him. Prior to his getting this shock, it was not necessary for me to assist him. He became more weak and nervous and finally quit work. He went out two or three times before he quit and came back because he couldn't stand it. He was nervous, trembly and pale. I did not notice anything of this kind before this shock."

He testified that he thought the shock was received between the first and fifteenth of December.

"The pump was not moved the latter part of July or August instead of December. It seems to me it was the first of December or the last of November, that the pump was moved. It don't seem like the last of August to me. I saw some kind of pale watery blood coming from my father's ear the same evening he was hurt."

Other witnesses for the plaintiffs were more or less indefinite as to when the shock was received, though one miner thought it was in August and another thought it was in July. The defendant's witnesses who testified on this question seemed all to place it in July.

On May 14, 1921, the arbitrator made the award, finding that John Casebeer died January 8, 1921, as a result of accidental injuries received while in the course of his employment. That his average earnings the preceding year were more than $1,500, three times the amount of which would be more than $3,800, the total amount of compensation to be received by the plaintiffs for which judgment was given with costs. A petition for review and cancellation of the award was filed by the defendant company on the grounds that it was obtained through fraud and undue influence; was made without authority of law; that the arbitrator was guilty of misconduct and found contrary to law $3,800 due, and that the conclusions were not supported by the testimony. The plaintiff moved to confirm the report and findings and on June 22, 1921, the court sustained the motion to the extent of ordering $405 paid in a

lump sum, and the balance of the award at the rate of $15 a week on the regular semimonthly pay days until paid in full.

The defendant moved for a new trial, claiming error in finding that Casebeer died of an accident arising out of and in the course of his employment, and in the finding that the defendant should pay interest on $405, and for refusing to cancel the award.

Specifications of errors are abuse of discretion in refusing the petition for modification and cancellation; error in finding that the deceased's death was caused by accident arising out of and in the course of his employment, and refusing a new trial.

The defendant in its brief insists that the award is void because not filed within the time provided by law; the statute fixing sixty days is cited; but as the defendant appeared without objection before the arbitrator when sixty days had already elapsed and tried its side of the case it cannot be heard now to insist on the invalidity of the award because not made within sixty days.

It is argued that the arbitrator made the award without authority of law because the claim for compensation was not made within the required time and because the death did not result from an injury arising out of and in the course of the employment. The application for appointment of an arbitrator alleged demand in writing and knowledge of the injury on the part of the defendant, and no point appears to have been made on this in the hearing before the arbitrator. Neither does the point appear to have been made in the motion to set aside the award or in the motion for a new trial. We deem it without merit now.

It is argued that the death did not result from an injury arising out of and in the course of the employment because the shock occurred several months before the fatal sickness of the deceased and considerable point is sought to be made touching the time when the pump was moved and when the shock was received. The conflicting evidence on this point was considered by the arbitrator who found against the defendant and there is sufficient evidence in the record to support such finding. In almost every lawsuit the trier or triers of facts must reconcile conflicting testimony and that is all the arbitrator did in this case and his conclusion is something which the trial court did not, and which we cannot, overturn.

A careful consideration of the entire record and all the points presented impels the conclusion that no material error has been committed.

The judgment is affirmed.